**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**KIMAYA G.,**

**Plaintiff,**

**v.**

**Civil Action 2:25-cv-1214**
**Judge Algenon L. Marbley**
**Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Kimaya B. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND

Plaintiff filed her SSI application in July 2022, alleging that she became disabled beginning March 18, 2022. (R. at 267–78.) After Plaintiff's application was denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a telephonic hearing on January 23, 2024, at which Plaintiff, who was represented by counsel, appeared and testified. (*Id.*

at 69–103.) A vocational expert ("VE") also appeared and testified. The case was subsequently reassigned, and a supplemental telephonic hearing was held before ALJ Dennis J. Raterink ("ALJ Raterink") on August 21, 2024. (*Id*. at 41–68.)

On September 27, 2024, ALJ Raterink issued an unfavorable determination, which became final on August 81, 2025, when the Appeals Council declined review. (R. at 14–40, 1–6.)

Plaintiff seeks judicial review of that unfavorable determination. She contends that the ALJ reversibly erred when evaluating prior administrative findings from state agency reviewing psychologists. (Pl.'s Statement of Errors 7–13, ECF No. 14.) The undersigned concludes that this contention of error lacks merit.

## II. THE ALJ'S DECISION

The ALJ issued the unfavorable determination on September 27, 2024. (R. at 14–40.) The ALJ initially determined that Plaintiff met the insured status requirements of the Social Security

Act through June 30, 2025. (*Id*. at 20.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged July 23, 2021 disability onset date. (*Id*.) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: left eye vision loss, status-post ruptured globe repair in March 2022 and subsequent retinal detachment repair attempt in April 2022; headaches; depression; anxiety; personality disorder; and substance abuse disorder. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 22.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 404.1545(a)(1), (b)–(c).

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she should avoid tasks requiring depth perception, such as threading a needle. She can engage in tasks that can be performed with monocular vision. She can perform no work at unprotected heights, with moving mechanical parts, or operating a motor vehicle. She can carry out very short and simple instructions. She can have no interaction with the public. She can have no more than occasional interaction with coworkers and supervisors, but she is unable to perform team or tandem work. She can operate in a low-stress environment, which is defined as having to occasionally make work-related decisions and occasionally deal with changes in the workplace.

(*Id*. at 24.)

At step four, the ALJ relied on testimony from the VE to determine that Plaintiff could not perform her past relevant work. (*Id*. at 31.) The ALJ again relied on the VE's testimony at step five to determine that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform including the representative jobs of production helper, kitchen helper, and industrial cleaner. (*Id*. at 32–33.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 34.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health & Hum. Serv.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As explained above, Plaintiff contends that the ALJ committed reversible error when evaluating prior administrative findings from state agency reviewers. (Pl.'s Statement of Errors 7–13, ECF No. 8.) The undersigned is not persuaded.

### A. The Evaluation of Medical and Other Types of Evidence

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[3] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical

[3] Because Plaintiff's application was filed in 2022, it is subject to regulations governing applications filed after March 27, 2017.

findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how they were considered. *Id.* With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

**B. The Prior Administrative Findings**

On October 26, 2022, Janet Souder, Psy.D. reviewed Plaintiff's file at the initial level. (R. at 115.) In relevant part, she found that Plaintiff had moderate limitations in sustained concentration and persistence. (*Id*. at 114.) Dr. Souder further found that because of those limits, Plaintiff could "carry out simple and short instructions in an environment with no strict production rates or quotas where she can work away from others." (*Id*. at 114.)

Dr. Souder also found that Plaintiff had moderate limitations in social interaction. (*Id.*) Based on those limitations, she found that Plaintiff could "interact with familiar supervisors and coworkers on an occasional, brief and superficial basis in a non-public setting." (*Id.*)

Finally, Dr. Sounder found that Plaintiff had moderate limitations in adaptation. (*Id.*) As a result of those limits, Dr. Souder found that Plaintiff could "respond to occasional changes in the work setting when given notifications ahead of time." (*Id.*)

Plaintiff's file was reviewed at reconsideration on March 6, 2023, by Evelyn Adamo, Psy.D. (*Id.* at 125.) She agreed with Dr. Souder's findings. (*Id.* at 124–25.)

**C. The ALJ's Analysis**

Here, the ALJ began by summarizing the reviewers' findings and explaining that they were only partially persuasive. The ALJ wrote as follows:

> The State agency psychological consultants found that the claimant had mild limitation in understanding, remembering, or applying information, had moderate limitations in the other "paragraph B" criteria, and could carry out simple and short instructions in an environment with no strict production rates or quotas and with occasional changes in the work setting when given notifications ahead of time and where she could work away from others with interaction only with familiar supervisors and coworkers on an occasional, brief, and superficial basis in a nonpublic setting (Exs. 1A; 3A). The language used in the prior administrative medical findings - such as brief, familiar, and strict - is not vocationally defined, and thus, does not adequately articulate the limitation for use in a residual functional capacity assessment. *Accordingly, I find the State agency psychological consultants' assessments persuasive only insofar as they indicate that there are indeed moderate limitations in the areas of: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself*. To this end, I find their assessments partially persuasive as they are well supported and generally consistent with the evidence of record.

(*Id.* at 30–31) (emphasis added).)

The ALJ then discussed the supportability factor, writing as follows:

> Regarding supportability, I note that they considered the claimant's limited mental health treatment and mental status findings in presentations to medical providers. In doing so, they carefully analyzed the relationship

> between the identified severe mental impairments and their resulting limitations.

(*Id*. at 31.) As this discussion demonstrates, the ALJ determined that the reviewers' findings were well supported because they considered Plaintiff's mental-health treatment and mental status examinations. (*Id*. at 31.) Substantial evidence supports that determination. The reviewers discussed and summarized that evidence in Plaintiff's file. (*Id*. at 109, 119.)

The ALJ also separately discussed the consistency factor, writing as follows:

> Regarding consistency, [the reviewers'] assessments are somewhat consistent with such evidence, which shows that the claimant has reported to her medical providers greater functioning than she has alleged, had fairly unremarkable mental status examinations as detailed above, and responded well to psychotropic medications when she takes them. However, as noted above, their assessments do not contain vocationally defined language. For example, I do not find their social limitations persuasive, including limiting the claimant to "familiar supervisors and coworkers" as the claimant has not demonstrated aggressive behavior to her medical providers or at either hearing, and she acknowledged to the psychological consultative examiner that she generally related well to coworkers and supervisors. For similar reasons, I do not find that she would be limited to such interactions on a "brief and superficial basis" as she was able to maintain appropriate interaction under detailed questioning with both ALJ Reamon and me during her hearings as well as with her medical providers as detailed above. I have also deviated from their assessments with respect to corresponding limitations in the claimant's ability to concentrate, persist, or maintain pace as well as adapt or manage oneself as I have used more specific, vocationally defined, and policy compliant language to express the moderate limitations arising from the claimant's mental impairments.

(*Id*.) As this discussion demonstrates, the ALJ generally determined that the reviewers' findings were only somewhat consistent with the record. (*Id*.) In particular, he relied on Plaintiff's relatively unremarkable mental-status examination findings and improvements with medications. (*Id*.)

Substantial evidence supports that determination. The record contains a number of relatively unremarkable mental status examination findings. For example, in August 2021,

Plaintiff was alert and oriented, with normal mood and affect, appropriate grooming and hygiene, and appropriate insight. (*Id*. at 701–02, 705, 711.) In October 2021, she was cooperative, and alert and oriented with normal mood, behavior, thought content, and judgment. (*Id*. at 782, 829.) Another examination at that time documented normal mood and affect, and appropriate insight. (*Id*. at 836.) In December 2021, Plaintiff was awake and alert, oriented to person place, year, and month, and demonstrated good attention, normal mood and affect, normal insight, fluent speech, and intact comprehension. (*Id*. at 875.) In April 2022, she was oriented with normal mood and affect. (*Id*. at 1009, 1019.) During a consultative examination in October 2022, Plaintiff was cooperative and fully oriented; she demonstrated fair concentration and attention; and she was able to understand and follow simple instructions, although some instructions had to be repeated. (*Id*. at 1180.)

The record also supports the ALJ's observation that Plaintiff responded to treatment. Plaintiff was voluntarily hospitalized for approximately eight days in February 2022. At admission, her initial mental status examination documented depressed mood, flat affect, distractibility, and poor judgment and insight. (*Id*. at 900.) After treatment with Buspar and Lexapro, however, she reported less depression and anxiety and improved energy, motivation, and interest. (*Id*. at 904.) At discharge, she was calm and cooperative, with euthymic mood, appropriate affect, logical and goal-directed thought processes, and fair and improved insight and judgment. (*Id*. at 904–05.)

A similar pattern occurred during Plaintiff's approximately five-day voluntary hospitalization in November 2023. Her initial examination documented, among other things, anxious and guarded behavior, depressed and irritable mood, and poor judgment and insight. (*Id*. at 1280–81.) After treatment, however, Plaintiff was discharged calm and cooperative, with

euthymic mood, appropriate affect, logical and goal-directed thought processes, and fair and improved insight and judgment. (*Id*. at 1290–91.)

Accordingly, substantial evidence supports the ALJ's general determination that the reviewers' findings were only somewhat consistent with the record. Although the record documents periods of significant symptoms, it also contains relatively unremarkable mental status findings and evidence that Plaintiff improved with treatment. The ALJ accounted for that evidence by accepting the reviewers' conclusions that Plaintiff had moderate limits while declining to adopt all the functional restrictions found by the reviewers.

Plaintiff nevertheless contends that the ALJ failed to account for particular functional restrictions that she claims should have been included in her RFC. (Pl.'s Statement of Errors 8–9, ECF No. 14.) First, she contends that the ALJ erred by omitting the reviewers' limit to: 1) working with familiar supervisors and coworkers; 2) on a brief and superficial[4] basis; 3) in a non-public setting. (*Id*. at 9–11.) As already explained, however, the ALJ did not find the reviewers' findings persuasive. At most, the ALJ determined that they were only partly persuasive. (R. at 31.) And the regulations do not require an ALJ to adopt every limit in a prior administrative finding that is found to be only partly persuasive.

In any event, these limits were part of the reviewers' findings about Plaintiff's social interaction limits. (*Id*. at 114, 124.) And the ALJ expressly determined that the reviewers' social interaction limits were not persuasive because Plaintiff was appropriate and had not demonstrated aggressive behavior towards her medical providers or at her hearings and she

[4] Plaintiff devotes time discussing that "superficial" interactions is not a vague or vocationally undefined term, and if it is, it still cannot be ignored. (Pl.'s Statement of Errors 11–12, ECF No. 14.) But the ALJ did not describe superficial interactions as vague or vocationally undetermined. (R. at 30–31.)

reported to a consultative examiner that generally related well to coworkers and supervisors. (*Id*. at 31.) Substantial evidence supports that reasoning. Plaintiff indeed reported that she generally related adequately to coworkers and supervisors. (*Id*. at 1178.) She also reported that she had not experienced anger problems at work even though she became agitated easily. (*Id*. at 1180.) In addition, the record reflects that providers described Plaintiff as cooperative or pleasant. (*Id*. at 502, 510, 540, 782, 783, 905, 1180, 1195, 1291.)

Plaintiff also contends that the ALJ erred by omitting the reviewers' limit to: 1) work away from others and 2) that Plaintiff be given advanced notice about workplace changes. (Pl.'s Statement of Errors 8–9, ECF No. 14.) These two limits were part of the reviewers' findings about Plaintiff's concentration and persistence limits and her adaptation limits, respectively. (R. at 124, 125, 114.) Again, however, the ALJ determined that the reviewers' finding were only partly persuasive. (*Id*. at 31.) Thus, this is not an instance where an ALJ omitted limits that he credited. Moreover, the ALJ expressly stated that he was deviating from reviewers' formulation of Plaintiff's concentration and persistence and adaptation limits and explained that he did so because he used different language to express Plaintiff's moderate limits in more vocationally relevant terms. (*Id*. at 31.)

Although the ALJ could have explained in greater detail why he declined to include the work away from others and advanced notice limits, his evaluation of the reviewers' findings, read in its entirety, permits a reviewing Court to trace his reasoning. The ALJ summarized the reviewers' findings, found them to be only partially persuasive, accepted their conclusions that Plaintiff had moderate limits in concentration and persistence and adaptation, and expressly stated that he was deviating from their formulations of the corresponding restrictions in these two

areas in favor of more vocationally defined language. (*Id*. at 30–31.) In this, circumstance, the undersigned cannot conclude that the ALJ reversibly erred.

In sum, the ALJ properly evaluated the reviewers' findings under the supportability and consistency factors, and substantial evidence supports his supportability and consistency determinations. Accordingly, the undersigned finds no error in the ALJ's evaluation of the reviewers' findings.

## V. RECOMMENDED DISPOSITION

For all the reasons contained herein, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE